**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ORAYINKA ORAFIDIYA,**<br>***Plaintiff,***<br><br>**v.**<br><br>**TEMPLE UNIVERSITY, et al,**<br>***Defendants.*** | **Civil No. 25-1646** |

# MEMORANDUM

**COSTELLO, J.** **September 1, 2026**

Plaintiff Orayinka Orafidiya is a former medical student at Temple University's Lewis Katz School of Medicine. She initiated this action after Temple dismissed her from the medical program. *See generally* ECF No. 6. Plaintiff asserts a variety of federal and state claims, including disability, race, sex, and age discrimination, retaliation, breach of contract, and related torts against Temple University, Senior Vice President and Provost Gregory N. Mandel, Dean Amy J. Goldberg, M.D., Senior Associate Dean Maryellen Gusic, M.D., and Associate Dean Dione J. Cash, M.D. (collectively, "Defendants"). Defendants have moved to dismiss the Amended Complaint. For the reasons that follow, the Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiff is a Black woman who identifies as queer. First Amended Complaint ("FAC"), ECF No. 6 ¶ 14. She was thirty-nine years old when she entered Temple's medical school in the fall of 2019. *Id.* ¶¶ 14, 19. Plaintiff suffers from disabling anxiety and depression, which restrict her ability to sleep, read, write, learn, and work. *Id.* ¶ 22. Plaintiff provided a letter of accommodation to Temple based on these impairments. *Id.* ¶ 18.

Plaintiff successfully completed Blocks 1 and 2 of the medical school curricula. *Id.* ¶ 19. Halfway through Block 3, Plaintiff's mother suffered a massive stroke. *Id.* Plaintiff was the primary caregiver for her mother yet still managed to pass Block 3. *Id.* Because of her mother's declining health, Plaintiff switched to Independent Student Status ("ISS") for the spring and fall 2020 semesters. *Id.* ¶ 23. She planned to return to school in January 2021 and graduate with the Class of 2024. *Id.*

**A. The Return Plan and Initial Friction**

In early 2021, Plaintiff met with then-Senior Associate Dean of Education Dr. Gerald Sterling to make a plan for her return. *Id.* ¶ 25. They agreed that Plaintiff would remain in ISS for fall 2021 and subsequently join the Class of 2025. *Id.* The agreement did not include any requirement that Plaintiff attend orientation or restart the curriculum. *Id.* ¶ 29. Sterling retired shortly before the fall semester began, leaving other administrators to implement the agreement. *Id.* ¶ 25.

The relationship between Plaintiff and the administrators deteriorated upon Plaintiff's return. She contacted Senior Associate Dean Maryellen Gusic, M.D. ("Gusic") to explain her circumstances and to request accommodations to assist with her transition back to school. *Id.* ¶ 27. Gusic denied Plaintiff's requests. *Id.* After Plaintiff declined to attend the Class of 2025 orientation and other group sessions, Gusic referred her to the Academic Standards & Promotions Committee ("ASPC") for discipline. *Id.* ¶ 28. Gusic also expressed her preference that Plaintiff withdraw from the school entirely. *Id.* ¶ 30.

**B. Remediation Exams and Escalating Administrative Pressure**

On December 17, 2021, the ASPC issued a decision letter outlining specific academic requirements for Plaintiff to meet. *Id.* ¶ 30. Plaintiff was required to remediate two courses

(Fundamentals 3 and Fundamentals 4) after the winter break. *Id.* ¶ 34. However, Temple never scheduled or administered any remediation exam in the spring. *Id.* ¶ 35. Instead, the school gave Plaintiff "Incomplete" grades for both courses and required her to take a joint remediation exam in the summer. *Id.*

In January 2022, Plaintiff's father's health began to deteriorate, and he moved in with Plaintiff. *Id.* ¶ 45. Plaintiff struggled to balance her caregiving obligations and her studies. *Id.* In February, she requested permission to participate in small group discussions virtually. *Id.* Gusic and Associate Dean Dione J. Cash, M.D. ("Cash") denied her request. *Id.* ¶¶ 45-46.

On March 15, ten days before a final exam, Gusic and Cash summoned Plaintiff to a meeting. *Id.* ¶ 51. Plaintiff requested accommodations for her mental health, but none of her requests were granted. *Id.* Gusic again expressed that Plaintiff should withdraw. *Id.* Gusic also told Plaintiff that she would refer her to the ASPC for a hearing on March 22. *Id.* ¶ 52. Plaintiff expressed concern about the timing of the hearing relative to her final exam. *Id.* ¶ 53. Gusic responded that given Plaintiff's midterm scores, Plaintiff had no mathematical possibility of passing her current course (Systems I) and there was no point in Plaintiff taking the final exam. *Id.*

In April 2022, Gusic and Cash met with then-Interim Dean Amy J. Goldberg, M.D. ("Goldberg") to discuss Plaintiff's academic standing. *Id.* ¶ 55. Cash then gave Plaintiff two options. *Id.* She could voluntarily withdraw or she could take a formal leave of absence. *Id.* ¶¶ 56-57. Either way, Temple would note on Plaintiff's Medical School Performance Evaluation residency referral letter that she had been "unprofessional" during her time as a student. *Id.* ¶ 57.

By late May 2022, Plaintiff was "within reach" of passing the Systems 3 final exam. *Id.* ¶ 62. On the eve of the exam, Gusic notified Plaintiff that a disciplinary hearing would take

place immediately following the exam. *Id.* ¶ 63. Plaintiff never sat for the exam because her father passed away that day. *Id.* ¶ 64. Plaintiff subsequently requested a modified exam schedule. *Id.* ¶ 65. Although Plaintiff's letter of accommodation provided for this, Gusic denied the request. *Id.* ¶¶ 65, 131.

### C. Plaintiff's Appeals, Complaints, and Dismissal

On June 30, 2022, Plaintiff asked for a makeup date for the missed final exam. *Id.* ¶ 66. She also asked to take her two outstanding remediation exams. *Id.* Gusic barred Plaintiff from sitting for any exams and referred her back to the ASPC. *Id.* The ASPC issued a new decision letter on July 14, 2022.[1] *Id.* ¶ 68. Plaintiff appealed the decision letter and requested to meet with Goldberg before a final decision was made. *Id.* ¶¶ 68-69. The day before that meeting, Cash directed Plaintiff to attend orientation for completion of the first-year curriculum. *Id.* ¶ 69. Plaintiff reminded Cash that her appeal was still pending. *Id.* Following that conversation, Plaintiff received a final decision letter from Goldberg affirming the conditions in the July 14, 2022 letter. *Id.* ¶ 70.

Plaintiff subsequently joined the Class of 2026. *Id.* ¶ 74. She requested that she be allowed to sit for a comprehensive exam without any obligation to attend in-person activities. *Id.* This request was denied. *Id.* On August 8, 2022, Plaintiff elevated her grievances. "[I]n an effort to resolve the matters involving her mistreatment as a disabled student," Plaintiff prepared a presentation for Senior Vice President and Provost Gregory N. Mandel ("Mandel"). *Id.* ¶¶ 75, 77. The presentation included a narrative history, supporting documentation, proposed remedies, and a student petition. *Id.* Mandel deferred to Goldberg's discretion. *Id.* ¶ 78.

---

[1] The FAC does not explicitly describe the contents of the decision letter. Based on related allegations in the FAC, it appears that the decision letter may have required Plaintiff to repeat the first-year curriculum.

On October 16, 2022, Plaintiff authorized Temple's Office of Equal Opportunity Compliance to file an internal discrimination complaint on her behalf. *Id.* ¶ 79. Eleven days later, Goldberg emailed a "comprehensive plan" outlining the specifications for Plaintiff's continuation at the medical school. *Id.* ¶ 80. Plaintiff contested the terms. *Id.* On December 20, Gusic emailed Plaintiff stating that she respected Plaintiff's decision not to return to medical school. *Id.* ¶ 84. The same day, administrators changed Plaintiff's enrollment status to "DROPPED – NOT REGISTERED" without her consent. *Id.* ¶ 85.

On March 8, 2023, Goldberg sent a new enrollment plan. *Id.* ¶ 86. This plan changed Plaintiff's class year to the Class of 2027 and retroactively recorded a leave of absence for the Spring 2022 semester. *Id.* ¶¶ 86-87. The plan required a response by 5:00 p.m. on March 22, 2023. *Id.* ¶ 88. Plaintiff responded on the day of the deadline and requested an extension. *Id.* ¶ 89. The ASPC denied her request. *Id.* ¶ 90. On March 30, 2023, Goldberg notified Plaintiff of her immediate and final dismissal. *Id.* ¶ 91.

Plaintiff subsequently filed this lawsuit. The FAC includes the following claims: disability discrimination and failure to accommodate under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Pennsylvania Human Relations Act ("PHRA"); race, sex, and age discrimination under Title II, Title VI, 42 U.S.C. § 1981, Title IX, the Age Discrimination Act, and the PHRA; retaliation under the ADA and 42 U.S.C. § 1983; and state law contract and tort claims for breach of contract, intentional misrepresentation, intentional infliction of emotional distress, negligent hiring and supervision, and negligent infliction of emotional distress. Defendants have moved to dismiss the FAC.

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to support a reasonable inference "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "well-pleaded factual allegations," draw all reasonable inferences from them, and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (alterations omitted). "If the well-pleaded facts do not nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, No. 23-4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Claims Against the Individual Defendants

Individual defendants cannot be held liable under Title II or the Rehabilitation Act. *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 405-06 (M.D. Pa. 2020) (dismissing claims against individual defendants with prejudice) (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 189-

90 (3d Cir. 2002)). The Court will therefore dismiss Plaintiff's disability discrimination and ADA retaliation claims against Goldberg, Gusic, Cash, and Mandel with prejudice.

**B. Disability Discrimination – ADA, RA, and PHRA**

The same legal standards govern disability discrimination claims under the ADA, the RA, and the PHRA. *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). The Court will analyze these claims together. To survive a motion to dismiss, a plaintiff must plausibly allege that she: (1) has a disability; (2) was otherwise qualified to participate in the academic program; and (3) was denied the benefits of the program or was otherwise subjected to discrimination because of her disability. *Chambers*, 587 F.3d at 189.

*1.* <u>*Disability*</u>

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include sleeping, learning, reading, writing, concentrating, thinking, and working. *Id.* § 12102(2).

Defendants argue that Plaintiff's allegations lack sufficient detail because she fails to plead how her mental impairments substantially limit her daily functioning. ECF No. 27 at 18-19. Plaintiff alleges that she suffers from disabling anxiety and depression. She further connects those impairments to major life activities, including sleeping, reading, writing, learning, and working. ECF No. 6 ¶ 22. These allegations are sufficient to state a plausible claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213-14 (3d Cir. 2009) (holding that a plaintiff is not required to go into particulars about the life activity affected or detail the nature of her limitations to survive dismissal).

2. *Otherwise Qualified to Participate*

"An otherwise qualified individual is a person who can meet all of a program's requirements in spite of a disability, with or without reasonable accommodation." *Millington v. Temple Univ. Sch. of Dentistry*, 261 F. App'x 363, 366 (3d Cir. 2008) (internal citations omitted). Plaintiff alleges that she successfully completed her first three academic blocks. ECF No. 6 ¶¶ 19, 96. Her failures occurred only after her requested accommodations were denied. *Id.* ¶ 56. Accepting these facts as true and drawing all reasonable inferences in her favor, Plaintiff has sufficiently alleged that she was an otherwise qualified student.

3. *Denial of Benefits and Discrimination*

Plaintiff requested flexible attendance, exam modifications, and remote participation as accommodations for her disability. She alleges that similar accommodations were granted to other students or were technologically feasible. ECF No. 30-1 at 16.

Defendants argue that these accommodations were unreasonable as a matter of law. ECF No. 27 at 20-22. This argument is not appropriate at this stage. Indeed, the cases Defendants cite in support of this argument were each decided on a more developed factual record, not at the pleadings stage. *See Gati v. W. Ky. Univ.*, 283 F. Supp. 3d 616, 627 (W.D. Ky. 2017) (summary judgment); *Doe v. Haverford Sch.*, No. 3-3989, 2003 WL 22097782, at *1 (E.D. Pa. Aug. 5, 2003) (preliminary injunction); *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50-52 (3d Cir. 1986) (trial court ruled mid-trial that dismissal was academic, not disciplinary, and in discussing due process the Third Circuit noted deferential standard of review of academic decisions); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (summary judgment). Accordingly, Plaintiff's discrimination claims against Temple survive at least for now.

### C. Retaliation – ADA

Defendants moved to dismiss Plaintiff's ADA and 42 U.S.C. § 1983 retaliation claims. ECF No. 27 at 25-30. However, Defendants' memorandum contains no legal argument on the § 1983 retaliation claim. The Court therefore limits its review to the ADA retaliation claim. To state an ADA retaliation claim, a plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

#### *1. Protected Activity*

An employee or student "engages in protected activity when [she] requests accommodations in good faith." *See Steidle v. U.S. Liab. Ins. Co., Inc.*, 179 F.4th 193, 204 (3d Cir. 2026); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010). Defendants argue that because Plaintiff's accommodation requests were unreasonable, they cannot constitute protected activity. ECF No. 27 at 28. Courts routinely decline to decide whether a request is reasonable at the motion to dismiss stage. *Douglas v. Kensington Cmty. Corp. for Indiv. Dignity*, 775 F. Supp. 3d 881, 894 (E.D. Pa. 2025) ("Determining whether a particular accommodation is reasonable and whether a defendant could provide it without undue hardship 'are factual inquiries that are not properly decided in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).') (internal citations omitted); *Blanchetti v. Greensburg Salem Sch. Dist.*, No. 25-88, 2025 WL 4054413, at *4 n.5 (W.D. Pa. Aug. 5, 2025) ("Simply put, whether Plaintiff's accommodation requests were reasonable cannot be determined at the pleadings stage."). Accordingly, the Court declines to decide reasonableness at this time.

2. <u>*Causal Connection*</u>

A plaintiff can establish a causal connection between her protected activity and an adverse action by showing an "unusually suggestive temporal proximity," a "pattern of antagonism coupled with timing," or "evidence gleaned from the record as a whole." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (internal citations omitted).

Defendants first point to temporal proximity. They argue that the thirteen-month gap between Plaintiff's initial accommodation request and her ultimate dismissal in March 2023 negates any inference of causation. ECF No. 27 at 28-29. Plaintiff narrows this timeline by focusing on the smaller gaps between each individual request and the adverse actions that followed. ECF No. 30-1 at 22. Because the FAC does not always provide exact dates, the Court cannot track the precise proximity of each request to the administrative response, and it cannot infer a causal link based on temporal proximity alone.

However, Plaintiff also relies on a pattern of antagonism to establish causation. *Id.* A "constant barrage" of adverse actions can constitute a pattern of antagonism. *See Robinson v. Se. Pennsylvania Transp. Auth.*, 982 F.2d 892, 895-96 (3d Cir. 1993) (noting that after initial complaint, employer began harassing plaintiff by repeatedly disciplining him for minor matters, miscalculating his points for absence from work, and generally trying to provoke plaintiff to insubordination). Viewed as a whole, the FAC details escalating, continuous actions and administrative friction that began when Plaintiff returned to school in fall 2021 and persisted through her dismissal. Among other things, Plaintiff alleges that her repeated exercises of protected activity were met with administrative resistance and retaliation. This manifested as disciplinary referrals to the ASPC, unresolved exam arrangements that forced incomplete grades, and recurring pressure to withdraw. Crucially, Plaintiff alleges that administrators routinely

intensified this pressure before final examinations, impacting her ability to sit for or pass her exams. Finally, her enrollment status was modified without her consent shortly after she filed a complaint, which led to the processes leading to her dismissal. These consistent actions plausibly allege the necessary causal link under a pattern of antagonism framework.

**D. Discrimination Based on Race, Age, and Sex**

Plaintiff has failed to allege proper claims for race, age, and sex discrimination under Title II and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 1981, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and the PHRA.

*1. Race Discrimination Under Title II*

Defendants move to dismiss Plaintiff's Title II claim because Temple is not a place of public accommodation and Title II does not permit the relief she seeks. ECF No. 27 at 24-25. The Court agrees.

Under Title II, individuals are entitled to the full and fair enjoyment of any place of public accommodation without discrimination on the grounds of race, color, religion, or natural origin. 42 U.S.C. § 2000a(a). Public schools and university academic spaces generally do not constitute places of public accommodation. *See Carroll v. Millersville Univ. of Pa.*, No. 16-1406, 2019 WL 2423268, at *6-7 (E.D. Pa. June 6, 2019) (dismissing Title II claims arising from discrimination in the Registrar's office and classrooms); *see also Gilmore v. Amityville Union Free Sch. Dist.*, 305 F. Supp. 2d 271, 278-79 (E.D.N.Y. 2004) (holding public schools are not places of public accommodation because they "do not purport to be open to the general public in the ways, that for example, hotels, restaurants, and movie theaters (all establishments explicitly covered by Title II) do."). Because the FAC contains no facts alleging that Temple's medical school is a place of public accommodation, Plaintiff fails to state a claim.

Plaintiff's claim suffers from an additional fatal flaw. Title II permits only preventive, injunctive relief. It does not authorize an award of monetary damages or declaratory relief for past harm, which are the only forms of relief Plaintiff seeks. *Lewis v. Live! Casino & Hotel Philadelphia*, No. 25-3870, 2025 WL 2792126, at *6 (E.D. Pa. Sept. 30, 2025); *see also Three Rivers Ctr. for Indep. Living v. Hous. Auth. of Pittsburgh*, 382 F.3d 412, 420 (3d Cir. 2004); *Goode v. United States Dep't of Homeland Sec.*, 815 F. App'x 643, 645 (3d Cir. 2020). The Court will therefore dismiss this claim with prejudice.

*2. Race Discrimination Under Title VI and Section 1981*

Section 1981 guarantees all citizens an equal right to make and enforce contracts regardless of race. 42 U.S.C. § 1981(a). Title VI similarly bars race, color, or natural origin discrimination in programs receiving federal financial assistance. 42 U.S.C. § 2000d. Temple is a federally funded university, and both statutes therefore apply. To state a claim in this context, Plaintiff must plausibly allege that: (1) she is a member of a protected class; 2) she suffered an adverse action at the hands of the defendant in pursuit of her education; (3) she was qualified to continue in her pursuit of her education; and (4) she was treated differently from similarly situated students who are not members of the protected class. *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 666 (E.D. Pa. 2019) (internal citation omitted).

Defendants move to dismiss, arguing that Plaintiff fails to allege facts supporting an inference of intentional discrimination. ECF No. 27 at 25-27. Plaintiff responds that her status as a queer Black woman, paired with her allegation that others received modifications, is enough at the pleadings stage. ECF No. 30-1 at 21. She further contends that she does not need to plead comparator evidence to survive at this stage. *Id.*

Although Plaintiff does not need to identify exact parties or comparators to survive a motion to dismiss, she "must allege facts sufficient to make plausible the existence of . . . similarly situated parties." *Wax v. Tr. of Univ. of Pa.*, 799 F. Supp. 3d 422, 432 (E.D. Pa. 2025) (internal citation omitted). She has not done so. The FAC details a contentious relationship with school administrators over schedules, exams, and formatting, but is devoid of any link to her race. Instead, Plaintiff relies entirely on her status as a Black woman to conclude that her negative experiences must have been racially motivated.

Courts in this Circuit routinely dismiss claims resting on similar conclusory allegations. *See Osei v. La Salle Univ.*, 493 F. App'x 292, 296 (3d Cir. 2012) (affirming dismissal where a student failed to describe how students outside the protected class were treated); *Z.H. ex rel. Berish v. Penn Hills Sch. Dist.*, No. 12-1696, 2013 WL 300753, at *7 (W.D. Pa. Jan. 25, 2013) (holding that a student's conclusory allegation of racial discrimination without description of how students outside the protected class were treated differently warranted dismissal); *Or v. Hutner*, No. 10-1711, 2010 WL 3733016, at *3 (D.N.J. Sept. 17, 2010) (dismissing Title VI claim in part because Plaintiff failed to allege the existence of similarly-situated Caucasian students who were treated differently). Where race-based academic discrimination claims survive a motion to dismiss, plaintiffs provide facts showing that non-protected students who also failed exams or were dismissed were granted opportunities to re-take exams or appeal their dismissals. *Astaraee v. Villanova Univ.*, 509 F. Supp. 3d 265, 271 (E.D. Pa. 2020). Because Plaintiff fails to plead any facts regarding the background, qualifications, or treatment of other students, the Court will grant Defendants' motion and dismiss Plaintiff's race discrimination claims under Title VI and Section 1981 without prejudice.

*3. Sex Discrimination Under Title IX*

Title IX mandates that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance[.]" 20 U.S.C. § 1681(a). To survive dismissal, "the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." *Doe v. Univ. of Sciences*, 961 F.3d 203, 209 (3d Cir. 2020). Plaintiff merely alleges that she is a queer woman. ECF No. 6 ¶¶ 14, 36, 101. The FAC contains no factual allegations that students outside this class received more favorable treatment. Accordingly, the Court will dismiss Plaintiff's sex discrimination claim without prejudice.

*4. Age Discrimination Under the Age Discrimination Act of 1975*

Plaintiff's age discrimination claim suffers from the same defect as her race and sex discrimination claims. She merely alleges that she was 39 years old when she entered the program. ECF No. 6 ¶ 14. The FAC contains zero allegations that younger students received more favorable treatment, and Plaintiff pleads no other facts to suggest that her age factored into Defendants' actions. Because Plaintiff fails to raise a plausible inference of age discrimination, the Court will grant Defendants' motion and dismiss this claim without prejudice.

**E. Breach of Contract**

A breach of contract claim based on a university handbook or policy fails as a matter of law. Pennsylvania courts have consistently held that a student handbook between a public university and its students is not a contract. *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Cmwlth. Ct. 2009) (citing *Crabtree v. California Univ. of Pa.*, 606 A.2d 1239, 1240 n.3 (Pa. Cmwlth. Ct. 1990)). Accordingly, a student cannot state a breach of contract claim against a

public university based on a university handbook. *Tran*, 986 A.2d at 183; *see also Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011). Because Temple is a public university, ECF No. 27 at 36, the Court will dismiss any breach of contract claim relying on a handbook or policy with prejudice.

However, Plaintiff also bases her contract claim on "other agreements," including the oral agreement between Plaintiff and Sterling regarding her return to school. ECF No. 30-1 at 29. The FAC adequately alleges a breach of contract claim based on these other agreements. First, Plaintiff alleges that her meeting with Sterling resulted in a concrete, oral return plan for the Fall 2021 semester. This agreement contained no requirements for Plaintiff to attend the general Class of 2025 orientation or to restart the Doctoring 1 curriculum. Despite this, Gusic subsequently referred Plaintiff for disciplinary action because she failed to attend the orientation. Second, Plaintiff points to the ASPC's December 17, 2021 letter. This document explicitly stated that she would be permitted to remediate her Fundamentals 3 exam. Temple allegedly breached this agreement by failing to administer the exam, instead giving her "Incomplete" grades and forcing her into a single, comprehensive summer exam. Plaintiff alleges that these individual breaches resulted in damages. Accepting Plaintiff's well-pleaded facts as true, she has stated a plausible claim. The Court will therefore deny Defendants' motion as it relates to these oral and written agreements.

### F. State Law Torts

#### *1. Misrepresentation*

In Pennsylvania, there is a two-year statute of limitations on misrepresentation claims. 42 Pa. Cons. Stat. § 5524. Plaintiff bases her claim on (1) an undated misrepresentation by Temple that Plaintiff requested to postpone the Fundamentals 3 examination, (2) a May 12, 2022

misrepresentation that Plaintiff had been "unprofessional" during her time as a medical student, and (3) a December 20, 2022 misrepresentation that she decided not to return to school.[2] ECF No. 6 ¶¶ 43, 57-60, 84, 109-11. Plaintiff filed her initial Complaint on March 28, 2025. ECF No. 1. Because these misrepresentations occurred more than two years prior to March 28, 2025, this claim is time-barred. The Court therefore will dismiss Plaintiff's intentional misrepresentation claim with prejudice.

*2. Intentional Infliction of Emotional Distress*

"In Pennsylvania, '[l]iability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Kasper v. County of Bucks*, 514 F. App'x 210, 217 (3d Cir. 2013) (internal citations and quotations omitted). Pennsylvania courts also require evidence of a physical injury caused by the defendant's conduct. *See Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. Ct. 1994).

Plaintiff's claim fails. While the administrative actions she describes may have been unfair or adversarial, they do not rise to the level of conduct so outrageous in character as to be beyond all possible bounds of decency in a civilized society. Examples of outrageous conduct include "(1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." *Dull v. W. Manchester Twp. Police Dep't.*, 604 F.

---

[2] Although undated, the alleged misrepresentation that Plaintiff requested to postpone the Fundamentals 3 examination was clearly made before the other dated misrepresentations.

Supp. 2d 739, 756 (M.D. Pa. 2009) (citing *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998)). Plaintiff has alleged no such outrageous conduct. The Court will therefore dismiss Plaintiff's intentional infliction of emotional distress claim with prejudice.

*3. Negligent Hiring and Negligent Supervision*

While negligent hiring and negligent supervision are distinct causes of action, both require employer knowledge or notice. To establish a breach of duty under either theory, a plaintiff must allege facts showing that the employer knew or should have known of an employee's problematic propensities, making the resulting harm foreseeable. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (holding that negligent supervision claim requires employer to know or have reason to know of the necessity and ability to control the employee); *Smith v. RB Dist., Inc.*, 498 F. Supp. 3d 645, 667 (E.D. Pa. 2020) (finding that negligent hiring claim requires that employer knew or should have known of the violent propensity of the employee). Negligent hiring requires such notice to exist at the time of hire. *Klingaman v. J&R Schugel Trucking*, No. 25-584, 2025 WL 3079978, at *3 (E.D. Pa. Nov. 4, 2025).

The FAC is devoid of facts indicating that Temple had prior notice of any dangerous, volatile, or concerning propensities regarding its administrators. For the negligent supervision claim, Plaintiff points to no historical conduct that would have alerted Temple that Gusic, Cash, Goldberg, or Mandel required heightened monitoring. Plaintiff's negligent hiring claim suffers from the same defect. Without alleging prior notice of some alarming conduct by these individuals, Plaintiff cannot make out her claims. To the extent Plaintiff asserts these claims against the individual defendants, they also fail for lack of notice and for lack of any allegations suggesting the personal involvement of any of the individual defendants in the hiring or

appointment of any of the other individual defendants. Because Plaintiff could theoretically plead facts to cure these deficiencies, the Court will dismiss these claims without prejudice.

*4. <u>Negligent Infliction of Emotional Distress</u>*

In Pennsylvania, a claim for negligent infliction of emotional distress is strictly limited to four explicit scenarios: (1) "the plaintiff was subjected to a physical impact"; (2) "the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury"; (3) "the plaintiff observed a tortious injury to a close relative"; or (4) "the defendant had a contractual or fiduciary duty towards the plaintiff." *MDB v. Punxsutawney Christian Sch.*, 386 F. Supp. 3d 565, 592 (W.D. Pa. 2019).

Only the fourth scenario—the existence of a contractual or fiduciary duty—could apply here. Under Pennsylvania law, this scenario is exceptionally narrow. Lower courts have routinely limited the kinds of contractual and fiduciary relationships that fit into this scenario and have declined to expand it to the relationship between a school and its students. *Kovalev v. Walmart Inc.*, No. 22-1217, 2022 WL 16536230, at *5 (E.D. Pa. Oct. 28, 2022); *MDB*, 386 F. Supp. at 594; *Humphries v. Pa. State Univ.*, No. 20-64, 2021 WL 4355352, at *22 (M.D. Pa. Sept. 24, 2021) (holding that relationship between university and its students does not obviously and objectively hold the potential for deep emotional harm); *Hershman v. Muhlenberg Coll.*, 17 F. Supp. 3d 454, 460 (E.D. Pa. 2014) (granting motion to dismiss because the "relationship between a college and its students does not obviously hold the potential of deep emotional harm."); *De Camara v. Bryn Mawr Coll.*, No. 25-2287, 2025 WL 2779338, at *16 (E.D. Pa. Sept. 26, 2025) (dismissing claim because relationship between private college and its student generally does not hold potential for deep emotional harm); *Kling v. Univ. of Pittsburgh. Med. Ctr.*, No. 18-01368, 2020 WL 4218004, at *2-3 (W.D. Pa. July 23, 2020) (explaining

Pennsylvania had not recognized a special relationship between a student and university). Because no amendment can cure this defect, the Court will dismiss Plaintiff's negligent infliction of emotional distress claim with prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendants' motion to dismiss the FAC in part and deny it in part. An appropriate Order will follow.

**BY THE COURT:**

MARY KAY COSTELLO, J.